Filed 7/2/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re LANDON M. et al., Persons Coming Under the Juvenile Court Law. | B349454 (Los Angeles County Super. Ct. No. 22CCJP04416C-D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. LESLIE M., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kristen J. Byrdsong, Juvenile Court Referee. Dismissed.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel and Jessica Buckelew, Deputy County Counsel, for Plaintiff and Respondent.

_____

Leslie M. (Mother) appeals from the jurisdiction findings and disposition order declaring three-year-old Landon M. and 19-month-old D.M. dependents of the juvenile court under Welfare and Institutions Code section 300, subdivisions (b)(1) and (j).[1] The juvenile court sustained allegations that T.M. (Father) brandished a weapon at a cashier in a department store while Mother and the children were in the store, then Father fled from the police in a high-speed chase with D.M. buckled into his car seat in the backseat. The court found Mother failed to protect the children because she knew or should have known Father possessed guns but allowed Father to have unlimited access to the children.

Father did not appeal from the juvenile court's jurisdiction findings or disposition orders. On April 6, 2026, during the pendency of this appeal, the juvenile court terminated its jurisdiction and granted Mother sole legal and physical custody of the children. Mother contends that notwithstanding these facts, under *In re S.R.* (2025) 18 Cal.5th 1042 (*S.R.*) her appeal is not moot because she could be reported to the California Department of Justice (DOJ) for inclusion in the Child Abuse Central Index

_____

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

(CACI) under Penal Code section 11169, subdivision (a). However, Mother's failure to protect the children by allowing Father to have access to them despite knowing that Father possessed guns does not meet the definition of reportable "severe neglect" under Penal Code section 11165.3 (that she *willfully* caused or permitted a child to be placed in a situation that endangered the child's person or health). Rather, it constitutes "general neglect" under Penal Code section 11165.2, subdivision (b) (the *negligent* failure to provide supervision that places a child at substantial risk of suffering serious physical harm or illness), which is not reportable.

Because we cannot provide Mother any effective relief, we dismiss the appeal as moot.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 15, 2025 the Los Angeles County Department of Children and Family Services (Department) received a referral alleging severe neglect of Landon and D.M. after Father was arrested for child endangerment and several offenses related to brandishing a loaded firearm. On that day, Father, Mother, Landon, and D.M. were at a department store in Manhattan Beach when Father pulled out a loaded semiautomatic handgun and brandished it at a store employee. When police officers arrived at the location, Father got into his vehicle and drove away with D.M. buckled into a car seat behind Father. Father attempted to run over a police officer in the store parking lot and then led police on a pursuit for 30 minutes, driving at a high speed through many intersections before surrendering. D.M. was not injured.

Father was arrested and charged with child endangerment, assault with a deadly weapon on a police officer, felon in possession of a firearm, resisting arrest, and several Vehicle Code violations, and he was arrested on an outstanding warrant. During his booking, Father fell to the ground and began shaking, screamed, and said he had taken methamphetamine. On July 11, 2025 the Department obtained a court order removing the children from Father (who was in jail) based on general neglect, but the juvenile court denied the Department's request for an order removing the children from Mother.

In the course of the Department's investigation, Mother told the social worker that she did not know Father was carrying a gun on June 15 and that she was in the parking lot buckling the children into their car seats when Father brandished the gun inside the store. Mother was also not present during Father's encounter with the police because Landon had wandered back into the store and Mother chased after him. Mother stated she never saw Father use methamphetamine and she did not know of any drug abuse by Father. Mother denied ever using drugs, and she tested negative for drug use. Mother said Father had not lived in her home since 2022, he did not keep weapons in her home, and when he gets out of jail, "I guess he'll have to stay with his parents because he won't be able to come back here."

Landon was the subject of a previous dependency proceeding in 2022 following an incident in which Father got angry with Mother while she was driving. Father fired a gun out the car window at an empty building and was subsequently arrested. Landon, then four months old, was in the car when Father fired the gun. The Department filed a dependency

petition under section 300, former subdivision (b), although the court later dismissed the petition without prejudice.

Aiden B., Mother's 16-year-old son from a previous relationship, told the social worker that a few years earlier Father had shown him an assault rifle in Mother's presence and on another occasion Father showed Aiden a pistol while the two were alone in the car. Aiden stated there was no drug use, violence, or mental, physical, or sexual abuse in Mother's home, although he lived primarily with his father and infrequently visited Mother's home. When the social worker inspected Mother's home in early July 2025, while Father was still in jail, Landon and D.M. were in good spirits and were appropriately dressed, and there were no signs of abuse or neglect. The family shared an apartment with the maternal aunt, who reported the children were well cared for and protected by Mother and herself.

On July 15, 2025 the Department filed a dependency petition on behalf of Landon, D.M., and Aiden under section 300, subdivisions (b)(1) and (j). The petition described the June 15 incident and Father's arrest and alleged that Father had shown Aiden firearms in Mother's presence and Father had a history of convictions for violent crimes. The petition further alleged that Mother knew or reasonably should have known that Father was in possession of guns and she failed to protect the children by allowing Father to reside in the home and to have unlimited access to the children.

In its September 15, 2025 jurisdiction and disposition report, the Department stated that Landon and D.M. "appear to be doing well in the care and supervision of the mother" and concluded their "safety and well-being can be maintained" in Mother's care. The Department recommended the juvenile court

sustain the petition and allow Landon and D.M. to remain with Mother under Department supervision.

At the October 3, 2025 jurisdiction and disposition hearing, the juvenile court sustained the allegations in both counts of the petition as to Mother and Father and declared Landon and D.M. dependents of the court.[2] With respect to Mother, the court found not credible her assertion that she did not know Father possessed guns in light of the prior incident when Father fired a gun out of the car with Landon in the car, and it found Mother failed to protect the children from a "very dangerous situation." The court allowed the children to remain in Mother's home under Department supervision. The court ordered Mother to participate in parenting classes and individual counseling, and it prohibited Mother from allowing Father to reside in the home.

Mother timely appealed from the jurisdiction findings and disposition order; Father did not appeal.

At the April 3, 2026 review hearing (§ 364), the juvenile court terminated jurisdiction over Landon and D.M., and on April 6 the court entered a juvenile custody order granting Mother sole legal and physical custody of the children.[3]

---

[2] On the Department's recommendation, the juvenile court dismissed the petition on behalf of Aiden, who was then 17 years old and living with his father.

[3] On our own motion we take judicial notice of the juvenile court's April 3 and April 6, 2026 minute orders. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

6

## DISCUSSION

A.     *Mootness and Dependency Appeals*

"A court is tasked with the duty "'to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'"" (*In re D.P.* (2023) 14 Cal.5th 266, 276 (*D.P.*); accord, *S.R., supra*, 18 Cal.5th at p. 1051.)  "A case becomes moot when events "'render[] it impossible for [a] court, if it should decide the case in favor of plaintiff, to grant him any effect[ive] relief.'" [Citation.]  For relief to be 'effective,' two requirements must be met.  First, the plaintiff must complain of an ongoing harm.  Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks." (*D.P.*, at p. 276; accord, *S.R.*, at p. 1051.) "This rule applies in the dependency context." (*D.P.*, at p. 276; see *In re N.S.* (2016) 245 Cal.App.4th 53, 60 ["the critical factor in considering whether a dependency appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error"].)  ""When no effective relief can be granted, an appeal is moot and will be dismissed."" (*In re J.A.* (2020) 47 Cal.App.5th 1036, 1050-1051.)

"An order terminating juvenile court jurisdiction generally renders an appeal from an earlier order moot." (*In re Rashad D.* (2021) 63 Cal.App.5th 156, 163; accord, *In re E.T.* (2023) 217 Cal.App.4th 426, 436 [appeal "may become moot where subsequent events, including orders by the juvenile court, render it impossible for the reviewing court to grant effective relief"].) However, "when a juvenile court's [jurisdictional] finding forms the basis for an order that continues to impact a parent's rights—

7

for instance, by restricting visitation or custody—that jurisdictional finding remains subject to challenge, even if the juvenile court has terminated its jurisdiction." (*D.P., supra*, 14 Cal.5th at p. 276.) Conversely, when "the juvenile court terminates its jurisdiction without issuing any order that continues to impact the parents," "complaining of 'stigma' alone is insufficient to sustain an appeal. The stigma must be paired with some effect on the [parent's] legal status that is capable of being redressed by a favorable court decision." (*Id.* at p. 277; accord, *S.R., supra*, 18 Cal.5th at p. 1051.) "A reviewing court must "'decide on a case-by-case basis whether subsequent events in a juvenile dependency matter make a case moot and whether [its] decision would affect the outcome in a subsequent proceeding.'"" (*D.P.*, at p. 276; accord, *S.R.*, at p. 1051.)

In addition, the "principle that '[d]ependency jurisdiction attaches to a child, not to his or her parent' [citation], means that "'[a]s long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate.'" [Citation.] Thus, where jurisdictional findings have been made as to both parents but only one parent brings a challenge, the appeal may be rendered moot." (*D.P., supra*, 14 Cal.5th at pp. 283-284; accord, *In re M.C.* (2023) 88 Cal.App.5th 137, 150-151 ["'Because the juvenile court assumes jurisdiction of the child, not the parents, jurisdiction may exist based on the conduct of one parent only.'"]; cf. *In re Jayden A.* (2025) 111 Cal.App.5th 1334, 1343 [although father's appeal did not challenge the juvenile court's jurisdiction findings as to mother, his appeal was not moot because he also challenged the court's disposition order removing child from his custody].)

Even where an appeal is moot, "courts may exercise their 'inherent discretion' to reach the merits of the dispute." (*D.P., supra*, 14 Cal.5th at p. 282; accord, *S.R., supra*, 18 Cal.5th at p. 1052.) As the Supreme Court explained in *D.P.*, appellate courts will generally exercise their discretion when the case presents an issue of broad public interest that is likely to recur, there may be a recurrence of the controversy between the parties, or a material question remains for the court to determine. (*D.P.*, at p. 282.) The court identified additional factors reviewing courts may evaluate when considering whether to exercise their discretion to decide a moot case, including whether a challenged jurisdiction finding could impact current or future dependency proceedings, and the nature of the allegations against the parent (with more egregious findings showing a parent's greater interest in challenging the findings). (*Id.* at pp. 285-286.) Further, courts may consider why the appeal became moot; for example, principles of fairness may favor discretionary review of cases rendered moot "by the prompt compliance or otherwise laudable behavior of the parent challenging the jurisdictional finding on appeal." (*Id.* at p. 286.)

B.    *Mother's Appeal Is Moot*

On appeal, Mother argues there was insufficient evidence to support the juvenile court's jurisdiction findings that Mother "knew or reasonably should have known" that Father had guns and that she failed to protect Landon and D.R. by allowing Father to have unrestricted access to the children. Mother does not dispute the court's factual or legal findings as to Father's conduct, arguing instead that Father does not pose a continuing risk to the children because he is now incarcerated and Mother has committed to excluding him from her home if he is released.

Nor does Mother challenge any aspect of the court's disposition order, and, as discussed, the court never detained or removed the children from Mother.

Mother's appeal is moot for two reasons. First, because neither Mother nor Father appealed from the juvenile court's jurisdiction finding as to Father under section 300, subdivisions (b)(1) and (j), even if we reverse the finding Mother failed to protect the children, the court would still have jurisdiction over Landon and D.R. Therefore, we could not provide Mother effective relief. (*D.P., supra*, 14 Cal.5th at pp. 283-284; *In re M.C., supra*, 88 Cal.App.5th at pp. 150-151.) Second, while the appeal was pending, the court terminated jurisdiction over the children and entered a final custody order granting Mother sole physical and legal custody. Because the challenged jurisdiction finding does not form the basis for an order that continues to impact Mother's rights after termination, the appeal is moot. (*D.P.*, at p. 276.)

Mother contends her appeal is not moot because the juvenile court's findings under section 300, subdivision (b)(1), "subject Mother to inclusion" in the CACI. Pursuant to the Child Abuse and Neglect Reporting Act (CANRA; Pen. Code, § 11164 et seq.), a child welfare agency "shall forward" for inclusion in the CACI every substantiated report of "child abuse or severe neglect." (Pen. Code, § 11169, subd. (a); see *S.R., supra*, 18 Cal.5th at p. 1048.) "'[I]nformation included in the CACI is available to a wide variety of state agencies, employers, and law enforcement,' and inclusion of a parent's conduct in the CACI carries significant consequences for the parent." (*S.R.*, at p. 1048; accord, *D.P., supra*, 14 Cal.5th at p. 279.) Moreover, "[w]here a juvenile court sustains an allegation of child abuse, a parent may

10

later be estopped from challenging his or her inclusion in the CACI." (*S.R.*, at p. 1055; see Pen. Code, § 11169, subd. (e).)

The Supreme Court in *D.P.* recognized that inclusion in the CACI "may be stigmatizing" because the information in the CACI may negatively impact a parent's ability to obtain a license, employment, volunteer opportunities, or placement of a child with the parent. (*D.P.*, *supra*, 14 Cal.5th at p. 279.) However, the court rejected the father's contention that his appeal of the juvenile court's jurisdiction findings had not become moot following termination of dependency jurisdiction on the grounds the Department was required to report him and the jurisdiction findings "would estop him from challenging his inclusion in the CACI." (*Id.* at p. 280.) The juvenile court in *D.P.* had sustained an allegation under section 355.1 that the rib fracture sustained by the parents' infant son "was of a sort that would generally not be sustained barring some neglect or harm to the child." (*D.P.*, at p. 274.) The Supreme Court held father's "CACI claim [was] too speculative to survive a mootness challenge" because the father had "not shown that the general neglect allegation against him was reported for inclusion in the CACI, nor [had] he shown that this type of allegation is reportable,"[4] (*Id.* at p. 280.)

More recently, the Supreme Court in *S.R.* addressed the question it "left open" in *D.P.*, namely, "[w]hether a parent's appeal from a juvenile court's jurisdictional finding survives a mootness challenge where the parent shows that an agency must report the allegation underlying the court's finding for inclusion

---

[4]     In *D.P.*, the father did not receive notice he had been or would be reported for inclusion in the CACI, and the Department submitted a sworn declaration that the sustained allegation had not been reported. (*D.P., supra*, 14 Cal.5th at p. 280.)

in the CACI." (*S.R., supra*, 18 Cal.5th at p. 1048.) The *S.R.* court answered "yes": Because it is presumed that a welfare agency will fulfill a mandatory reporting duty, where a juvenile court has made findings that a parent has committed "severe child abuse" (which the court found as to the mother who had threatened her daughters with a camping knife and hit one of them), "it is not speculative to conclude that [the] [m]other is or will be listed in the CACI, which carries serious legal consequences for her lifetime." (*Id.* at pp. 1048-1049, 1053.) In addition, reversal of unsupported jurisdiction findings could redress a parent's harm "by prompting removal of the parent from the CACI" or "preserving a parent's right to a grievance hearing to challenge an agency's failure to reclassify the report as unsubstantiated." (*Id.* at p. 1048; see Pen Code, §§ 11169, subds. (a), (d) & (e) [reporting requirements and right to a hearing], 11170, subd. (a) [requirement for DOJ to maintain the CACI].) Thus, "a parent demonstrates 'a specific legal or practical consequence that would be avoided upon reversal of the jurisdictional findings' [citation] when the parent shows that the challenged allegation is one that an agency must report for inclusion in the CACI." (*S.R.*, at p. 1048, quoting *D.P., supra*, 14 Cal.5th at p. 273.)[5]

---

[5] The Supreme Court in *S.R.* clarified, "[W]e have no occasion to decide whether a case is moot if . . . a parent shows the conduct at issue is likely but not indisputably reportable." (*S.R., supra*, 18 Cal.5th at p. 1054.) The court added, "in light of the dilemma that counsel may encounter in this context, we emphasize that appellate courts have discretion to conduct a merits review of the parent's claim even if the case is moot," citing the discretionary factors in *D.P., supra*, 14 Cal.5th at pages 282 to 287. (*S.R.*, at p. 1054.)

12

The facts in this case are more similar to those in *D.P.* than *S.R.* First, Mother has not shown that the Department reported her for inclusion in the CACI (and the Department on appeal denies that it has done so). Had the Department reported her, it would have been required to provide her with notice of its report. (See Pen. Code, § 11169, subd. (c) [when an agency forwards a report of suspected child abuse or severe neglect to DOJ, it "shall also notify in writing the known or suspected child abuser that he or she has been reported to [the CACI]"]; *D.P.*, *supra*, 14 Cal.5th at p. 279.) The record does not contain a notice of a CACI report.[6]

Second, Mother has not shown that the juvenile court's jurisdiction findings substantiated an allegation of "child abuse or severe neglect" that must be reported under Penal Code section 11169, subdivision (a). (See *S.R., supra*, 18 Cal.5th at p. 1048; *D.P., supra*, 14 Cal.5th at p. 280.) CANRA defines "'child abuse'" as "physical injury or death inflicted by other than accidental means upon a child." (Pen. Code, § 11165.6.) "'Severe

---

[6] In her opening brief Mother notes the Department stated in its September 2025 jurisdiction and disposition report that a CACI "is pending" for Mother. The Department responds that the reference to a pending CACI referred to "a routine check by social workers of a parent's child protective history in CACI," which the Department had not yet received from DOJ (not a CACI report for this case). The Department's explanation is persuasive: the reference to CACI appears under the heading "Criminal History" and states that Mother had a "hit" on the California Law Enforcement Telecommunications System for her 2022 arrest while her CACI was pending. (Capitalization omitted.) Moreover, the Department used the same language in describing its search into the criminal history of Aiden's father, who was not the subject of any neglect allegations.

neglect'" is defined as either (1) "the negligent failure . . . to protect the child from severe malnutrition or medically diagnosed nonorganic failure to thrive" or (2) "those situations of neglect where any person having the care or custody of a child willfully causes or permits the person or health of the child to be placed in a situation such that their person or health is endangered as proscribed by [Penal Code] section 11165.3." (*Id.*, § 11165.2, subd. (a).) Penal Code section 11165.3, as relevant here, similarly defines "'the willful harming or injuring of a child or the endangering of the person or health of a child'" to mean "a situation in which any person . . . having the care or custody of any child,."

In contrast, "'[g]eneral neglect,'" which is not reportable in the CACI, is defined as "the negligent failure of a person having the care or custody of a child to provide adequate food, clothing, shelter, medical care, *or supervision* where no physical injury to the child has occurred but the child is at substantial risk of suffering serious physical harm or illness." (Pen. Code, § 11165.2, subd. (b), italics added; see § 11169, subd. (a) [agency "shall forward" a report of every case of "known or suspected child abuse or severe neglect that is determined to be substantiated, *other than cases coming within subdivision (b) of Section 11165.2*" (italics added)].)

The petition alleged under section 300, subdivisions (b)(1) and (j), that the parents' conduct collectively "endanger[ed] the children's physical health and safety and place[d] the children . . . at risk of serious harm, damage, danger and failure to protect," but it did not allege conduct by Mother constituting either "child abuse" or "severe neglect." (See *S.R., supra*, 18 Cal.5th at pp. 1056-1057 ["the criteria for a CACI listing based on 'child

14

abuse or severe neglect' under CANRA generally appear to be narrower than the grounds for juvenile dependency jurisdiction under [section 300]"].)

The principal allegations of the sustained petition pertained to Father brandishing a firearm in the store and fleeing from the police in a high-speed chase with D.M. in the car. Although Mother went shopping with Father and the children, the petition did not allege Mother was present when Father brandished the gun or fled with D.M. in the car. Rather, the petition alleged Mother on a prior occasion had seen Father show guns to Aiden (as a teenager), and she "knew or reasonably should have known" that Father possessed guns, yet she allowed him to reside in her home with unlimited access to their children. These allegations fall within the definition of "general neglect" under Penal Code section 11165.2, subdivision (b), i.e., the negligent failure to provide adequate supervision where the child suffers no physical injury but is at substantial risk of suffering serious physical harm.

The facts here are in contrast to a reportable instance of severe neglect under Penal Code section 11165.2, subdivision (a), which, as relevant here, would have applied if Mother "willfully cause[d] or permit[ted]" Landon or D.M. to be in a situation where the child's person or health was endangered, for example, if she knew or reasonably should have known Father would brandish a gun in the store or flee from the police with one of the children in the car. (See Pen. Code, § 11165.3.) There is no such allegation here. Accordingly, Mother's CACI claim is "too

15

speculative to survive a mootness challenge." (*D.P.*, *supra*, 14 Cal.5th at p. 280.)[7]

## DISPOSITION

Mother's appeal is dismissed as moot.

FEUER, J.

We concur:

SEGAL, Acting P. J.

STONE, J.

---

[7]     Mother asserts in her reply brief and her supplemental letter brief addressing mootness that we should exercise our discretion to hear the merits of the appeal.  She argues that discretionary review is especially appropriate where "the conduct [at issue] is likely but not indisputably reportable," quoting *S.R., supra*, 18 Cal.5th at page 1054.  For the reasons discussed, we disagree that Mother's conduct is "likely reportable."  In any event, Mother has not presented any argument or evidence supporting discretionary review of a moot appeal under the factors enumerated in *D.P.* and *S.R.*